## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) VICKI JO LEWIS, Individually and as Co-Personal Representative of the ESTATE OF ISAIAH MARK LEWIS, deceased; and (2) TROY LEVET LEWIS, Individually and as Co-Personal Representative of the ESTATE OF ISAIAH MARK LEWIS, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>(1) CITY OF EDMOND, an Oklahoma Municipal Corporation ; and, (2) POLICE SGT. MILO BOX, individually; and (3) POLICE OFFICER DENTON SCHERMAN, Individually,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CIV-19 -489-R<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

**COMES NOW** the Plaintiffs, by and through their counsel, and for their causes of action against Defendants state as follows:

### INTRODUCTION

1. This is a Section 1983 Civil Rights action against Defendants for violations of Plaintiffs' constitutional rights.

2. On April 29, 2019, at approximately 1:00 p.m., Isaiah Mark Lewis, a 17-year old African-American, was in the throes of a mental health crisis. He had stripped off his clothes in public and was being chased by officers of the Edmond Police Department. The officers chased Isaiah Mark Lewis through the front door of a house in the 500 block of Gray Fox Run in Edmond, where they cornered him, tasered him, then shot him to death.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction of these claims pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq; the Judicial Code, 18 U.S.C. §§ 1331 and 1343(a); and the 4th and 14th Amendments to the Constitution the United States.

4. The amount in controversy exceeds $75,000, exclusive of costs and interest.

5. Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to the plaintiff's claims occurred in this judicial district.

## PARTIES

6. Plaintiff Vicki Jo Lewis is a resident of Edmond, Oklahoma County, Oklahoma, is the mother of minor child, Isaiah Mark Lewis, who was seventeen years of age and to graduate from high school, and the Co-Administrator and or Co- Personal Representative of the Estate of Isaiah Mark Lewis, deceased, which was filed in the District of Court of Oklahoma County, Oklahoma, Case No. PB-2-19-549.

7. Plaintiff Troy Levet Lewis is a resident of Edmond, Oklahoma County, Oklahoma, is the father of minor child, Isaiah Mark Lewis, who was seventeen years of age and to graduate from high school and the Co-Administrator and Co-Personal Representative of the Estate of Isaiah Mark Lewis, deceased, which was filed in the District of Court of Oklahoma County, Oklahoma, Case No. PB-2-19-549.

8. Defendant Edmond, an Oklahoma Municipal corporation, (hereinafter "City") is a city and municipality organized under the laws of the State of Oklahoma. The City is responsible for the policies, practices and customs of its Police Department and is responsible for the oversight, supervision, training and disciplining of the City's police officers.

9. Defendant Police Sargent Milo Box is a police officer employed by the City of Edmond Police Department and engaged in the conduct complained of in the course and scope of his employment with the City of Edmond. At the times material to this complaint, Officer Box was a duly appointed agent authorized to enforce the laws of the City of Edmond, and the State of Oklahoma and acted under the color of law at all times relevant to this action. He is sued in his individual capacity.

10. Defendant Police Officer Denton Scherman is a police officer employed by the City of Edmond Police Department and engaged in the conduct complained of in the course and scope of his employment with the City of Edmond. At the times material to this complaint, Officer Box was a duly appointed agent authorized to enforce the laws of the City of Edmond, and the State of Oklahoma and acted under the color of law at all times relevant to this action. He is sued in his individual capacity

**FACTS**

11. On April 29, 2019, at approximately 1:00 p.m., minor child, Isaiah Mark Lewis, was in the throes of a mental health crisis, having stripped off his clothes and begun to run aimlessly around in public for over an hour.

12. One or more 911 calls about a naked person running around were received by the Edmond Police Department.

13. One or more of these 911 calls ("911 Call") were heard by Edmond police officers Milo Box and Denton Scherman, both of whom responded to the calls.

14. In responding to the calls, Officers Milo Box and Denton Scherman, made visual contact with minor child, Isaiah Mark Lewis, and immediately determined that he was the subject of the 911 call about a naked person running around in public.

15. After making visual contact with Isaiah Mark Lewis, Officers Milo Box and Denton Scherman began to chase, yell, threaten, and place minor child, Isaiah Mark Lewis in greater distress and elevate his great anxiety. Minor child Lewis in response began to flee the officers in fear. The officers had reason to know Lewis was a juvenile and was visually determined to be unarmed possessing no weapons.

16. Officers Milo Box and Denton Scherman chased minor child, Isaiah Mark Lewis, through the front door of a house in the 500 block of Gray Fox Run in Edmond while yelling and screaming at him with threats of arrest and or perceived harm, where they cornered him. There, Officers Milo Box and Denton Scherman, without legal or other justification, improperly tasered minor child, Isaiah Mark Lewis, having reason to know such action would be ineffective due to close range and greater elevated anxiety and fear.

17. After tasering minor child, Isaiah Mark Lewis, Officers Milo Box and Denton Scherman, without legal or other justification, unholstered one or more of their service weapons and proceeded to shoot him to death while yelling and screaming at him all the while observing that this minor child was naked and unarmed possession no weapons.

18. Based on the information from the 911 call, Police Officers, including Defendant Officers Box and Scherman, responded to the 911 call knowing or having reason to know that they may be confronted with a situation involving someone in a mental health crisis. No request or plan was made to consult or have a person appropriately trained in dealing with crisis intervention was contacted.

19. After unnecessarily shooting Isaiah Mark Lewis, Defendants Box and Scherman and or other unknown officers of the City, intentionally dragged the minor child Lewis from the residence to the front poach area without regard to his injuries, denying him emergency

treatment and simply yelling at him to breathe that he would be fine. The minor child Lewis was treated simply as a fresh kill and attention was diverted to Defendants Box and Scherman and the area was immediately contaminated by other members of the City's police department knowing and having reason to know the integrity of the area would be lost.

20. On information and belief, Officers who responded to the 911 Call, including Defendant Officers Box and Scherman, were not:

    a. Trained and certified on Crisis Intervention Team Officers (CIT Officers) training;

    b. Trained and certified in Mental Health First Aid (MHFA);

    c. Specifically trained to deal with mentally ill citizens; or

    d. specifically trained to de-escalate situations by using de-escalating techniques;

    e. Required to maintain any skill, expertise, or proficiency regarding encounters with persons experiencing a mental health crisis.

## Count 1
## 42 U.S.C. § 1983 Claim for Excessive Force
## (Estate of Isaiah Mark Lewis Claim)

21. Plaintiffs Vicki Jo Lewis and Troy Levet Lewis, as Co-Administrators and or Co-Personal Representatives of the Estate of Isaiah Mark Lewis, repeat and reallege the preceding paragraphs of this Complaint as if they were fully set out in this Count.

22. Individuals deprived of their Fourth Amendment rights may seek redress under 42 U.S.C. § 1983. Section 1983 provides a cause of action against any "person" who deprives an individual of federally guaranteed rights "under color" of state law. See, 42 U.S.C. § 1983.

23. The minor child Lewis had not committed, nor was he in the act of committing a serious and/or violent crime, and was not a "dangerous fleeing felon."

24. The minor child Lewis did not have a weapon at the time he was shot and killed.

25. Under the Fourth Amendment, the minor child Lewis had a right to be free from the excessive force he experienced when Officer Box and Scherman unnecessarily and unjustly tasered then shot and killed him while he was in emotional distress. The officers actually increased the distress by chasing yelling, screaming and threatening minor child Lewis.

26. The improper actions of the Defendant Officers Milo Box and Denton Scherman as alleged in this Complaint which resulted in the shooting death of Isaiah Mark Lewis without just cause violated Isaiah Mark Lewis' rights under the Fourth Amendment to the United States Constitution to be secure in his person against unreasonable seizure, and his right to due process under the Fourteenth Amendment to the United States Constitution.

27. The actions of the Defendant Officers Milo Box and Denton Scherman as alleged in this Complaint were done intentionally, maliciously, wantonly, or oppressively, and or deliberately indifferent with the intent to cause injury to the plaintiff or in reckless disregard of the probability that they would cause injury to the plaintiff.

28. The actions of the Defendant Officers Milo Box and Denton Scherman as alleged in this Complaint were the direct and proximate cause of the constitutional violations set forth above and of the Plaintiffs' injuries.

29. Defendants are not entitled to qualified immunity for the complained conduct.

**Count 2**
**42 U.S.C. § 1983 Monell Claim**
**(Estate of Isaiah Mark Lewis Claim)**

30. Plaintiffs repeat and reallege the preceding paragraphs of this Complaint as if they were fully set out in this Count.

31. The actions of the Defendant Officers Milo Box and Denton Scherman as alleged in this Complaint were done under the authority of one or more interrelated de facto policies, practices and/or customs of the City of Edmond.

32. The actions of the Defendant Officers Milo Box and Denton Scherman as alleged in this Complaint were part and parcel of a widespread municipal policy, practice and custom which is further established by the involvement in, and ratification of, these actions by municipal supervisors and policy makers, including Edmond Mayors Charles Lamb and Elizabeth Warner, as well as by a wide range of police officials, including Edmond Police Chief J. D. Younger.

33. Edmond police officers are governed by Edmond Police Department policies and regulations.

**Edmond Police Department Crisis Intervention Policies**

34. Edmond Police Department Policy addresses how Edmond Police Department Officers are to handle contact with citizens during a mental health crisis.

35. Edmond Police Department Policy upon information and belief there are numerous incidents of mental health crisis situations over the last several years. In the context of appropriate responses and or use of force, none were known to be made public to be in violation of department policy. The rubberstamping of police responses and or use of force against persons in emotional or mental distress shows a pattern and practice of condoning the liberal use of force and or inappropriate police encounter with persons in emotional or mental crisis. . The City's written policy regarding responses to persons in emotional or mental crisis and or use of force against such is unconstitutional on its face. The policy is believed to be confusing, ambiguous, and permits the officers to choose any response including unbridled use of force in situations and under circumstances that are completely at odds with dealing with the persons experiencing

emotional or mental crisis and not appropriate with the Fourth Amendment standard of "objective reasonableness," as articulated by the United States Supreme Court.

36. The City has purportedly established a "Crisis Negotiations Team" to resolve crisis incidents to avoid danger and harm to the public including minor child, Isaiah Mark Lewis. However, the CNT is part of SWAT unit and never called or activated allowing the responding officers to take whatever action they chose including unnecessary use of deadly force.

37. Upon information and belief, the City also has a Communications division that does not appear to be trained in calling out specialized assistance or recognizing incidents of persons in emotional or mental crisis as no calls or identifications were made for crisis assistance or notice that the person was in emotional or mental crisis.

38. No procedures were followed that were designed to provide for the humane care and or treatment of the minor child, Isaiah Mark Lewis who was in emotional or mental crisis. No officer appropriately trained in handling a person experiencing emotional or mental crisis was contacted and the responding officers were allowed to treat the minor child as if such conditions were not present.

39. Rather than attempting to deescalate the situation, the policy of the City allowed the officers to elevate the encounter by chasing rather than moving slowly, waiting rather than acting immediately with threats and or show of force. No assistance was sought even though for over an hour the minor child did not exhibit any indication of harm to others until chased by the responding officers in an inappropriate manner.

40. The City policy allowed and the officers responded in a manner designed for the immediate apprehension by use of force regardless of emotional or mental health condition of the minor child, Isaiah Mark Lewis.

**Edmond Police Department Use Force Policy**

41. Edmond Police Department Policy governs the use of force against citizens.

42. In the context of deadly use of force, upon information and belief, there were numerous incidents of deadly force over the last several years. None were known to be made public to be in violation of department policy. The rubberstamping of police use of force, especially deadly use of force, shows a pattern and practice of condoning the liberal use of deadly force that is authorized from the top-down.

43. The City's written use of force policy regarding the use of deadly force is unconstitutional on its face. The policy is confusing, ambiguous, and permits the use of deadly force in situations and under circumstances that are completely at odds with the Fourth Amendment standard of "objective reasonableness," as articulated by the United States Supreme Court.

44. The City's written use of deadly force policy reads in pertinent part, "Deadly force may be used if the officer has probable cause to believe that the suspect poses an imminent threat of serious physical harm…"

45. The City's written use of deadly force policy does not require the officer to consider the "totality of the circumstances." The term "totality of the circumstances" is not used anywhere in City's use of deadly force policy, and the policy does not account for specific factors deemed relevant by the Tenth Circuit, including the mental health or capacity of the subject, the officer's training, and distance between the officer(s) and the subject.

46. The City's written use of deadly force policy does not require City's officers to use the required objectively reasonable standard. Instead, City's policy permits, if not invites,

City's officers to use deadly force anytime an officer subjectively believes that force is necessary, even where the objective officer would not.

47. The City's written use of deadly force policy actually authorizes deadly force in circumstances where deadly force is prohibited by the Fourth Amendment.

48. At all times material to the allegations contained in this complaint, the interrelated de facto policies, practices, and customs of Edmond, among other things described in the preceding paragraphs of this complaint, led to:

    a. The failure to dispatch properly trained crisis intervention officers to the scene of a potential mental health crisis;

    b. The failure to properly train officers to properly handle a potential mental health crisis;

    c. The failure to properly train officers to use de-escalation techniques before resort to the use of lethal force in a potential mental health crisis situation;

    d. The encouragement of excessive and unreasonable force against civilians in situations involving a potential mental health crisis;

    e. The failure to properly train and supervise officers with regard to discharging their weapons at civilians involved in a potential mental health crisis.

49. The policies, practices and/or customs and their failures as alleged in this Complaint, separately and together, are the proximate cause of the injury and death of Isaiah Mark Lewis and of the injury to his heirs.

50. The interrelated policies, practices and customs, as alleged in this Complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendant Officers to commit the acts alleged in this Complaint against Isaiah Mark Lewis; those policies, practices and customs, therefore, are the direct and proximate causes of the injuries to Isaiah Mark Lewis and his heirs.

51. By insulating Defendant Officers from the consequences of their misconduct, the policies, practices and customs alleged in this Complaint encouraged the lack of training, supervision, and appropriate conduct by Defendant Officers which resulted in the unlawful shooting of Isaiah Mark Lewis. These policies, practices and customs, therefore, are the moving forces behind, and the direct and proximate causes of, the unconstitutional acts committed by the Defendant Officers in this case and the injuries to Isaiah Mark Lewis h and his heirs.

52. There is no reasonable justification why Defendants Box and Scherman as well as other City officers have not been well-trained on the points above because:

    a. It is well-known that City's officers are authorized and expected to approach and apprehend citizens on a regular basis;

    b. It is well-known that City's officers often encounter individuals suffering from diminished capacity, as a result of a mental breakdown and/or the influence of alcohol or drugs;

    c. It is well-known that City's officers need better training and resources to deal with mentally ill and/or inebriated individuals safely and effectively.

    d. It is well-known that City has a history of above average rates of excessive force complaints; and

    e. It is well-known that City has a history of racially disparate outcomes in arrests and the use of force against African-Americans.

### Count 3
### Fourteenth Amendment Equal Protection Violation
### 42 U.S.C. § 1983
### (Estate of Isaiah Mark Lewis Claim)

53. Plaintiffs restate and incorporate previous paragraphs as if set forth fully herein.

54. The minor child Lewis as an African-American and a member of a protected class, had a right to Equal Protection under the law, and the City violated his rights by failing its duty to properly train and supervise City's officers, and by maintaining or tolerating a policy,

practice, custom, or culture that causes intentional disparate enforcement and outcomes in police encounters with African-Americans, who are similarly situated as non-African-Americans. These failures by the City constitute a violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

55. As a direct and proximate cause of the acts and omissions detailed above, the officers tasered then shot and killed the minor child Lewis, who was visually unarmed and naked, and on scene officers of the City refused to provide the minor child Lewis needed immediate medical care, despite knowing he was in immediate need of medical assistance. The officers simply dragged the minor child Lewis out of house to entryway porch area unnecessarily Defendants are not entitled to qualified immunity for the complained conduct.

## Count 4
## Negligence vs. City of Edmond

56. The allegations set forth in each preceding paragraph of this Complaint are incorporated by this reference as if fully set forth herein.

57. Plaintiffs timely presented a claim to the City of Edmond by on or about October 1, 2019, pursuant to Oklahoma's Governmental Tort Claims Act, 51 O.S. § 151 et seq. Their claim was deemed denied on approximately December 30, 2019.

58. The injuries inflicted on Plaintiffs were negligently and/or maliciously and willfully inflicted by Defendants Edmond Police Officers Milo Box and Denton Scherman while acting within the course and scope of their employment with the City of Edmond and Edmond Police Department, and under color of law.

59. Although the use of force by Defendants Edmond Police Officers Milo Box and Denton Scherman was excessive, the City of Edmond is vicariously liable for the injuries

inflicted on Plaintiffs by Defendants Edmond Police Officers Milo Box and Denton Scherman because their use of excessive force was incident to the service they were performing for their employer and arose out of actions being taken for their employer, the City of Edmond and the Edmond Police Department.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Vicki Jo Lewis and Troy Levet Lewis, as Co-Administrators and or Co-Personal Representatives of the Estate of Isaiah Mark Lewis pray for damages in an amount to be determined at trial on each count, exclusive of interest, costs and attorney fees, including punitive damages against the individual officers, attorney fees and costs pursuant to 42 U.S.C. §1988 for each of the applicable claims, pre- and post-judgment interest on any damages awarded at the statutory rate, and for other and such further relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiffs respectfully request that this matter be tried to a jury on all of the claims and or future amended claims against the Defendants.

          **Respectfully submitted,**

          */s/ David J. Batton*
          **David J. Batton, OBA #11750**
          **Law Office of David J. Batton**
          **P.O. Box 1285**
          **(330 W. Gray, Suite 304)**
          **Norman, OK 73070**
          **Tel: (405) 310-3432**
          **Fax: (405) 310-2646**
          dave@dbattonlaw.com
          battonlaw@coxinet.net

          **and**

                                        **Andrew M. Stroth, Ill Bar # 6276013**
                                        **Carlton Odim, Ill Bar # 6182368**
                                        **Amanda Yarusso Ill Bar # 6280081**
                                        **Action Injury Law Group, LLC**
                                        **191 North Wacker Drive Suite 2300**
                                        **Chicago, IL 60606**
                                        **(312) 771-2444**
                                        **(312) 641-6866 (Fax)**
                                        *[astroth@actioninjurylawgroup.com](mailto:astroth@actioninjurylawgroup.com)*
                                        *[carlton@actioninjurylawgroup.com](mailto:carlton@actioninjurylawgroup.com)*
                                        *[amanda@actioninjurylawgroup.com](mailto:amanda@actioninjurylawgroup.com)*

                                        *Attorneys for Plaintiffs*