# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) VICKI JO LEWIS, individually and as the CO-PERSONAL REPRESENTATIVE of the ESTATE OF ISAIAH MARK LEWIS, deceased; and (2) TROY LEVET LEWIS, individually and as the CO-PERSONAL REPRESENTATIVE of the ESTATE OF ISAIAH MARK LEWIS, deceased,<br><br>        Plaintiffs,<br><br>v.<br><br>(1) CITY OF EDMOND, an Oklahoma Municipal Corporation; (2) POLICE SGT. MILO BOX, individually; and (3) POLICE OFFICER DENTON SCHERMAN, individually,<br><br>        Defendants. | Case No.: CIV-19-489-R |

## DEFENDANTS' JOINT MOTION FOR
## CIVIL RESTRAINING ORDER AND BRIEF IN SUPPORT

Defendants, Police Sergeant Milo Box, Police Officer Denton Scherman, and City of Edmond (collectively "Defendants"), request the Court enter an Order directing Plaintiffs and Plaintiffs' counsel from speaking to the media and/or posting on social media about the evidence in this matter during trial. Defendants would also respectfully ask that the requested Order be extended to Plaintiffs' family members as well. They would further request the Order entered and effective immediately and that it remain in place until a final judgment has been entered in this matter. The purpose of the requested Order is to ensure

that Defendants are afforded a fair trial based solely on the evidence presented at trial to an impartial jury that is free from undue prejudice.

## **ARGUMENT & AUTHORITIES**

Plaintiffs, Plaintiffs' counsel, and Plaintiffs' family members should be enjoined from speaking to the news media and posting on social media, regarding the evidence presented in this matter, for the duration of the trial. "'[T]he preservation of a fair trial – the most fundamental of all freedoms – must be maintained at all costs.'" *United States v. Tijerina,* 412 F.2d 661, 667 (1969) (*quoting Estes v. Texas,* 381 U.S. 532, 540-41 (1965)). The objective of the jury in all cases is to "search for the truth." *Pfahler v. Swimm,* Civil Action No. 07-cv-01885-MJW-KLM, 2008 WL 323244, at *1 (D. Colo. Feb. 4, 2008) (*citing Sims v. ANR Freight Sys., Inc.,* 77 F.3d 846, 849 (5th Cir. 1996)). Outside influences may impair that search for the truth and thus prevent the jury from rendering a decision based solely on the evidence presented in open court. *Id.* (*citing Patterson v. Colo.,* 205 U.S. 454, 462 (1907)).

Further, it is the responsibility of the trial court to exercise control sufficient to ensure a fair trial that will "'protect their processes from prejudicial outside interferences.'" *Tijerina,* 412 F.2d at 667 (*quoting Sheppard v. Maxwell,* 384 U.S. 333, 363 (1966)). Trial courts have wide latitude in their ability to protect the judicial process from outside influences that could prevent justice, including the imposition of a civil gag order. *Pfahler,* at *1 (*citing Journal Pub. Co. v. Mechem,* 801 F.2d 1233, 1236 (10th Cir. 1986)). The cure for these potential injustices "lies in those remedial measures that will prevent the prejudice at its inception." *Sheppard,* 384 U.S. at 363.

When a party seeks to prevent the opposing party or the opposing party's counsel from speaking publicly about the litigation, the "Court must balance the party's right to speak freely on issues of public importance with the need to conduct a jury trial untainted by inadmissible evidence or argument." *Stinnett v. Reg'l Transp. Dist.,* 477 F. Supp. 3d 1187, 1190 (D. Colo. 2020) (*citing Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32-33 (1984)). This requires the court to decide "'whether the gravity of the evil, discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger.'" *Id.* (*quoting Pfahler,* at *1) (other citations omitted).

Barring extrajudicial statements by parties requires a finding of a "'reasonable likelihood' of prejudicial news." *Tijerina,* 412 F.2d at 666. In order to bar extrajudicial statements by counsel, the moving party must show a "<u>substantial likelihood of material prejudice</u> to the judicial proceeding." *Id.* at 1191 (emphasis in original). To determine whether there is a substantial likelihood of material prejudice, the court should consider "(1) 'the nature and extent of pretrial news coverage'; (2) 'whether other measures would be unlikely to mitigate the effects of pretrial publicity'; and (3) 'how effectively a restraining order would operate to prevent the threatened danger.'" *Id.* (*quoting Neb. Press Ass'n v. Stuart,* 427 U.S. 539, 562 (1976)).

Other factors relevant to whether a gag order is appropriate may include the size of the jury pool, length of time before trial, interest in the matter by the jury pool, and the length of time between news reports and trial. *See Stinnett,* 477 F. Supp. 3d at 1192-94. In that case, a gag order was denied because a trial date was not yet set, the jury pool was enormous, and the coverage of the event was described as "insubstantial." *Id.* The court

noted the average time from filing to trial in the district was over two years and also the delay of dockets due to COVID-19. *Id.* at 1194. The court also observed the extent of the pretrial news coverage were four reports within four months, with two in a newspaper, one on a website, and one from a radio station. *Id.* at 1192.

Even if extensive voir dire is conducted and emphatic jury instructions delivered, a restraint on any extrajudicial comments by trial participants, and even family members, can still be an appropriate remedy. *See United States v. Scrushy,* No. CR-03-BE-0530-S, 2004 WL 848221, at *6 (N.D. Ala. April 13, 2004) (*see also United States v. Hernandez,* Case No. 98-0721-CR-LENARD/DUBE, 2001 WL 37126807, at *8 (S.D. Fla. Feb. 20, 2001) (noting "that not even the most emphatic instruction or the most searching voir dire question can shield the jurors from banner headlines or ex parte statements and conduct by witnesses or counsel that would undoubtedly receive extensive coverage"). In *Scrushy,* the order at issue restricted extrajudicial statements by both parties, counsel, and participants, which included "any family members of the defendant who have received information . . . ." *Id.* at *1, 2, 7. The court held the order to be appropriate in this case after recognizing the parties' extensive use of the media, including press releases and press conferences, as well as the local and national news coverage and public interest in the case. *Id.* at *1, 4. The court noted that even "'extensive voir dire may not be able to filter out all of the effects of pretrial publicity'" and that jury instructions are similarly imperfect and would also "fail to address the threat of a 'carnival atmosphere.'" *Id.* at * 5 (*quoting United States v. Brown,* 218 F.3d 415, 431 (5th Cir. 2000)).

### a. Pretrial News Coverage

An order enjoining Plaintiffs', Plaintiffs' counsel and Plaintiffs' family members from speaking to the media during this trial is necessary because it will decrease the volume of pretrial publicity and avoid creating a "carnival atmosphere" in light of the extensive attention this case will undoubtedly attract. As was found relevant in the *Scrushy* case, Plaintiffs and Plaintiffs' counsel have utilized the media to generate publicity for this case, both through press conferences and by making statements regarding their theory of the case.

Plaintiffs and Plaintiffs' family held an initial press conference that was attended by the local news media and recorded and posted to Facebook. It received 7,800 views on Facebook, 129 reactions, and 72 comments. *See Family of Isaiah Lewis..live press conference footage*, Black Lives Matter OKC – Oklahoma City (May 1, 2019), https://www.facebook.com/1032289330116840/videos/1843363932432295. Another press conference held by Plaintiffs and Plaintiffs' counsel was also attended by the local news media and was recorded and posted to Facebook. It received 9,700 views on Facebook, 358 comments, and 101 reactions. *See The family of Isaiah Lewis, the teen shot and killed by Edmond police on April 29, will hold a press conference to make a significant announcement about the case,* KOKH Fox 25 News, Oklahoma (May 29, 2019), https://www.facebook.com/75262680860/videos/2212570818839232. Mr. Stroth stated that officers "unjustifiably shot and killed Isaiah Lewis" and that "the officers knew Isaiah was in crisis." *Id.* He also stated that Isaiah was "presenting no threat to police." *Id.* At the

end of the press conference, attendees held up signs and chanted "Justice for Isaiah." *Id.* Plaintiff Vicki Lewis stated that officers "did not render aid like they should have." *Id.*

Additionally, Plaintiffs' attorney, Andrew Stroth, gave a statement to KOCO News 5 in which he said:

> Isaiah Lewis was in distress. Isaiah Lewis needed help. But instead of helping him, these officers killed him. The officers, from our perspective, completely overreacted . . . .

*See* Dillon Richards, *Toxicology report reveals new details in death of teen shot by Edmond police,* KOCO News 5 (June 28, 2019, 6:58 PM), https://www.koco.com/article/exclusive-toxicology-report-reveals-new-details-in-death-of-teen-shot-by-edmond-police/28225497. A family member of Plaintiffs, Paul Tramble, has also spoken to the media. Mr. Tramble stated:

> My nephew was 17 years old. And the first thing they told everybody — they told the news media — is that my [nephew] was a man. He was a naked man running through Edmond. And, that was to scare all of you into thinking that he was some sort of violent individual.

*See* Brett Dickerson, *Protest calls for DA Prater to reopen Isaiah Lewis police shooting case*, Oklahoma City Free Press, https://freepressokc.com/protest-calls-for-da-prater-to-reopen-isaiah-lewis-police-shooting-case/ (last updated July 21, 2020).

Unlike *Stinnett,* this case has garnered extensive media coverage, both immediately after the incident and over one year later. *See* Exhibit 1 (a list of links to various news articles covering the shooting). Similar to the *Scrushy* case, news media both locally within Oklahoma, throughout the United States, and even some international coverage, reported on these events. *Id.* Although jurors for this case will be from the entire Western District

of Oklahoma, news media outside of the Oklahoma City metro reported or disseminated information on this case. *See* James Coburn, *Family files federal lawsuit in Edmond police shooting*, Enid News & Eagle (May 30, 2019), https://www.enidnews.com/news/state/family-files-federal-lawsuit-in-edmond-police-shooting/article_7b57129c-e836-5ff8-a4fa-62653cc09e94.html; *City: Police killing of naked, unarmed teen was justified,* The Shawnee News-Star (Aug. 9, 2019, 12:00 PM), https://www.news-star.com/news/20190809/oklahoma-news-briefs; *100+ rally to protest fatal police shooting of naked teen,* PoncaCityNow.com (May 5, 2019, 9:15 AM), https://www.poncacitynow.com/100-rally-to-protest-fatal-police-shooting-of-naked-teen/. Therefore, it is likely that interest in this case lies outside of the Oklahoma City area and potential jurors in those areas have been, and will continue to be, exposed to pretrial and trial publicity.

In addition, due to the public interest in this case, it is reasonable to expect that news coverage will increase immediately prior to and during the trial. Protestors, including members of the Lewis family, rallied both immediately following and over one year after the shooting. Immediately following the shooting, more than 100 people rallied and marched to the Edmond Police Department in protest. *See* Associated Press, *100-plus rally in protest of fatal Oklahoma police shooting,* The Norman Transcript (May 4, 2019), https://www.normantranscript.com/news/oklahoma/100-plus-rally-in-protest-of-fatal-oklahoma-police-shooting/article_5dadbd70-f0a0-56fe-a648-c97197a82b89.html. Over one year later, another protest was held in front of the Edmond Police Department. *See* Jordan Green, *Edmond protesters focus on Isaiah Lewis' death,* The Oklahoman (June 7,

7

2020, 1:06 AM), https://www.oklahoman.com/article/5664046/edmond-protesters-recall-isaiah-lewis-death. Then, on July 20, 2020, another protest of approximately 100 people was held at the Oklahoma County Courthouse with the Lewis family reportedly in attendance and refusing to leave the office of District Attorney David Prater. *See* Patrina Adger, *Protesters march to Oklahoma County Courthouse to demand justice for Isaiah Lewis,* KOCO News 5 (July 20, 2020, 5:36 PM), https://www.koco.com/article/protesters-march-to-oklahoma-county-courthouse-to-demand-justice-for-isaiah-lewis/33372115; Angela Shen, *Protesters call on DA to reopen Isaiah Lewis case,* KFOR (July 20, 2020, 6:27 PM), https://kfor.com/news/protesters-call-on-da-to-reopen-isaiah-lewis-case/.

     Additionally, KFOR published a story mentioning Isaiah Lewis on June 1, 2021. Austin Breasette, *One year ago: Downtown Oklahoma City erupted into chaos after hours of peaceful protests*, KFOR (June 1, 2021, 10:26 AM), https://kfor.com/news/local/one-year-ago-downtown-oklahoma-city-erupted-into-chaos-after-hours-of-peaceful-protests/. This report notes that the protests in June 2020 began as a peaceful way to remember Isaiah Lewis and others. *Id.* Although this story does not focus on the events surrounding the death of Isaiah Lewis, it does highlight the interest in the social issues surrounding this case. Rev. T. Sheri Dickerson of Black Lives Matter Oklahoma City is quoted as saying, "This year is going to be a continuation of us demanding justice." *Id.* The interest of the news media and organizations like Black Lives Matter in events that occurred over one year ago that are related to the events surrounding this case make it probable that pretrial publicity will continue to increase as trial draws near.

As demonstrated by the numerous articles and reports on this case, pretrial publicity here has been pervasive and widespread. In addition to the news coverage, Plaintiffs, Plaintiffs' counsel, and Plaintiffs' family members have utilized pretrial publicity to promote their version of the facts, potentially influencing jurors and creating a substantial likelihood that material prejudice will result. This makes remedial action appropriate in the form of a gag order to prevent any further outside influences that may render the jury unable to deliver a fair decision.

b. **Other Available Measures to Mitigate**

Additionally, this order is the least restrictive means available because voir dire, change of venue, and jury instructions are not adequate to address the potential effects of pretrial media coverage on this case. Determining the gravity of potential prejudice requires the Court to weigh "'factors unknown and unknowable.'" *United States v. Brown,* 218 F.3d 415, 431 (5th Cir. 2000) (*quoting Neb. Press,* 427 U.S. at 563). Jury instructions cannot control the atmosphere surrounding the trial, and with modern technology and communication, jurors' best efforts may not be enough to avoid prejudicial publicity. Additionally, voir dire, change of venue, and jury instructions "entail serious costs to the system." *Gentile v. State Bar of Nev.,* 501 U.S. 1030, 1075 (1991).

Public interest in this case is high and continues to the present date. Numerous social media posts have been circulating within the last few months and weeks about the incident, commonly found to include "#isaiahlewis" or "#justiceforisaiahlewis." *See* Exhibit 2 (a sampling of social media posts from Twitter and Instagram). These posts are public and easily accessible by members of the jury.

Additionally, Plaintiffs' family members have used their personal social media accounts to discuss evidence and spread their own theories of the case. Paul Tramble posted photos of the crime scene on his personal Facebook page on June 13, 2020. *See* Exhibit 3, pp. 1-2 (Paul Tramble Facebook posts). This post received 94 comments and 860 shares, as well as 428 reactions and includes Mr. Tramble's own version of the facts, which he believes is portrayed by the evidence. *Id.* This post also alleges the police are lying and covering for one another. *Id.* This same post was shared by a Twitter user and received 7,654 retweets, 93 quote tweets, and 7,546 likes. *Id.* at pp. 3-4. In another Facebook post from the same day, Mr. Tramble makes multiple assertions regarding the evidence in this case, including the location of gunshot wounds and bullet trajectory. *Id.* at p. 5. Finally, Mr. Tramble posted a video to Facebook on the same day captioned, "Justice for Isaiah Lewis…The Truth about what happened." *Id.* at p. 6. This video received 8,200 views and was shared 236 times. *Id.* at p. 7. In this video, Mr. Tramble offers his own theory of how events transpired, recounts statements allegedly made by witnesses, and comments on evidence recovered at the scene. *See Justice For Isaiah Lewis..The Truth about what happened,* Paul Tramble, June 13, 2020, https://www.facebook.com/paul.tramble.5/videos/3708120162538103. Most recently, Mr. Tramble posted on June 25, 2021, stating in part, "Who do you call when Police commit MURDER??? R.I.P Isaiah." Exh. 3, at p. 8.

Another family member, Alisha Tramble-Jackson, shared Mr. Tramble's posts on her personal Facebook page. *See* Exhibit 4 (Alisha Tramble-Jackson's Facebook posts). One such post from April 28, 2020, which has been shared by Ms. Tramble-Jackson as

recently as April 29, 2021, includes allegations of a "cover up" and "intimidation of witnesses." *Id.* at p. 1. Ms. Tramble-Jackson also shared a Facebook post from Plaintiff Vicki Lewis asserting that the police are "hired government assassins." *Id.* at pp. 2-3. The number of views and shares on theses social media posts demonstrates the persuasive power of individuals and just how probable it is that Plaintiffs and their family members will speak publicly about the evidence in the case.

Because similar circumstances are present here as were found to justify the restraining order in *Scrushy,* Plaintiffs, Plaintiffs' counsel, and Plaintiffs' family members should be enjoined from speaking to the media and posting on social media for the duration of trial. In both *Scrushy* and this case, press conferences were utilized by parties, media coverage was local and national, the public interest was great, and family members were requested to be enjoined. Therefore, a gag order is appropriate.

    c.    **Effectiveness**

An order enjoining Plaintiffs, Plaintiffs' counsel, and Plaintiffs' family members from speaking to the media during this trial is also necessary because without such an order, material prejudice is likely to result. The trial is fast approaching. Discovery deadlines have passed, dispositive motions have been filed, and the trial is not currently delayed. Additionally, as explained above, voir dire and jury instructions are not likely to be sufficient preventive measures. As such, a gag order is the most effective means to preserve the fairness of the trial.

Additionally, this order is necessary because Plaintiff Troy Lewis has recently approached potential witnesses, Amy and Jose Campuzano. *See* Excerpts from Deposition

of Amy Campuzano, attached as Exhibit 5, at 5:25-6:6; 16:20-22, and Excerpts from Deposition of Jose Campuzano, attached as Exhibit 6, at 10:21-11:17. Both Amy and Jose Campuzano were deposed on May 24, 2021. *See* Exhs. 5 and 6, at 4:5. Jose Campuzano testified that someone he believed to be Plaintiff Troy Lewis visited his home about one to two months prior to his deposition. *See* Exh. 6 at 10:21-11:5, 16-22. Amy Campuzano also testified an individual visited their home about two weeks prior to receiving her subpoena for deposition, and she assumed it was Plaintiff Troy Lewis, or a representative of the family. *See* Exh. 5, at 5:25-6:9. Jose Campuzano stated that Plaintiff Troy Lewis seemed to believe he was hiding something and did not believe him when he said he did not have any video. *See* Exh. 6, at 14:19-15:12. Amy Campuzano similarly stated that Plaintiff Troy Lewis did not believe Jose Campuzano when he said the cameras outside their house were not working on the day of the shooting and made some comment about the footage being hidden. *See* Exh. 5, at 16:1-14. So, in addition to using the news and social media as outside influences, potentially impairing the jury's ability to discern the truth, Plaintiffs have also directly confronted potential witnesses and accused them of hiding evidence.

Based on Plaintiff Troy Lewis's behavior in confronting witnesses and accusing them of hiding evidence, it is likely that Plaintiffs will continue to try and manipulate the evidence in this case by altering it to fit their version of the truth. Plaintiffs, Plaintiffs' counsel, and Plaintiffs' family members have shown their proclivity for using the news and social media to provide only their version of events. The only way to effectively prevent this type of material prejudice from occurring is to prevent the prejudice from its inception

by restraining Plaintiffs, Plaintiffs' counsel, and Plaintiffs' family members from speaking to the media and posting on social media about the evidence for the duration of the trial.

## **CONCLUSION**

Defendants are not asking that Plaintiffs, Plaintiffs' counsel, or Plaintiff's family members be precluded from making any comments about this case, but simply that they not be permitted to make public comments regarding the evidence at issue in this trial. This is necessary to ensure that Defendants, as well as Plaintiffs, are afforded a fair trial by impartial jurors.

Accordingly, Defendants respectfully ask the Court to enter an Order directing Plaintiffs, Plaintiffs' counsel, and Plaintiffs' family members to refrain from speaking to the media and posting on social media about the evidence in this matter. Defendants recognize the importance of First Amendment rights and do not make this request lightly. However, based on previous actions by opposing parties, counsel, and family members, a substantial likelihood of material prejudice exists. Defendants and their counsel agree to be bound by the same restrictions placed on Plaintiffs and Plaintiffs' counsel. Defendants would ask that this Order be entered immediately and continue until a final judgment has been entered in this matter.

                                                Respectfully submitted,

                                                *s/ Kathryn D. Terry*
                                                Kathryn D. Terry, OBA # 17151
                                                Cody J. Cooper, OBA # 31025
                                                Phillips Murrah P.C.
                                                101 North Robinson
                                                Corporate Tower, 13th Floor

Oklahoma City, OK 73102
(405) 235-4100 Telephone
(405) 235-4133 Facsimile
kdterry@phillipsmurrah.com
cjcooper@phillipsmurrah.com
*Attorneys for Defendants Milo Box and Denton Scherman*


and


 s/Richard Hornbeek
*signed and filed with permission*
Richard Hornbeek, OBA # 10855
B. Taylor Clark, OBA # 22524
Hornbeek Vitali & Braun, PLLC
3711 North Classen Boulevard
Oklahoma City, OK 73118
(405) 236-8600 Telephone
(405) 236-8602 Facsimile
hornbeek@hvblaw.com
clark@hvblaw.com
**Attorneys for City of Edmond**

**CERTIFICATE OF SERVICE**

      On the 2nd day of July, 2021, a copy of the foregoing Motion for Civil Restraining Order and Brief was served via the Court Clerk's ECF filing system to the following:

Woodrow K. Glass, OBA #15690
Geoffrey A. Tabor, OBA #32880
Ward & Glass, LLP
1601 36th Ave. NW
Norman, OK 73072
Tel: (405) 310-3432
Fax: (405) 310-2646

David J. Batton, OBA #11750
Law Office of David J. Batton
P.O. Box 1285
(303 W. Gray, Suite 304)
Norman, OK 73070
Tel: (405) 310-3432
Fax: (405) 310-2646

Andrew M. Stroth
Carlton Odom
Action Injury Law Group, LLC
191 North Wacker Drive
Suite 2300
Chicago, IL 60606
Tel: (312) 771-2444
Fax: (312) 641-6866

                                              *s/ Kathryn D. Terry*
                                              Kathryn D. Terry

01646429.DOCX